GOVERNMENT OF THE VIRGIN ISLANDS

v.

ALAN PETERSEN, Appellant

No. 76-2074

United States Court of Appeals

Third Circuit

Argued December 10, 1976

Filed April 13, 1977

WINSTON A. HODGE, ESQ., Christiansted, St. Croix, V.I., and ALEXANDER A. FARRELLY, ESQ., Charlotte Amalie, St. Thomas, V.I., *for appellant*

R. ERIC MOORE, ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for appellee*

Before SEITZ, *Chief Judge*, GIBBONS and HUNTER, *Circuit Judges*

## OPINION OF THE COURT

SEITZ, *Chief Judge*

Defendant, Alan Petersen, appeals from a final judgment of conviction and sentence upon a jury verdict finding guilt on two counts of second degree murder. Defendant urges five bases for reversal,[1] only two of which require discussion: the district court's refusal to suppress eyewitness testimony, and its refusal to admit opinion testimony concerning defendant's religious beliefs bearing upon his character trait for nonviolence.

---

[1] We have considered and reject the other contentions raised by defendant, to wit, that the district court erred in refusing to ask certain of defendant's proposed voir dire questions; in instructing the jury to continue deliberations after it indicated that it was deadlocked without reiterating cautionary instructions; and that defendant was denied due process and equal protection by the court's refusal to strike a jury selected from an array in which there were only several prospective jurors between the ages of 18 and 20 years.

## I. Eyewitness Testimony

Uncontradicted testimony at trial established the events surrounding the homicides. Just before midnight on January 15, 1976, two young men entered a small bar; shortly thereafter, one of the young men engaged in a heated argument with two older men who had been seated at the bar. The young man was physically ejected by the proprietor, Mr. Carrasco, whereupon the man's companion left voluntarily. Fifteen minutes later the young man who had been ejected was seen looking through the partially open door of the bar while two of his companions entered, ordered several beers and then left. The three were heard talking outside at the corner of the building.

Shortly thereafter, at about 12:45 a.m. on January 16, as the two older men prepared to leave, Carrasco warned them that the boys were waiting outside. Carrasco heard the men start their car, heard two shots, rushed to the door and witnessed a young man firing a third shot into the back of the car. The two older men were found dead in the front seat.

The only question at trial was whether defendant was the assailant. Defendant produced the testimony of a number of alibi witnesses that he had been home asleep during the entire evening and night in question and had not been anywhere near the murder scene. The government produced three identification witnesses. The barmaid, de Colon, gave in-court testimony of her out-of-court photographic identification of defendant as the young man who had argued and been ejected, and the photographs were received in evidence. de Colon also gave a verbal description of the young man and made an in-court identification of defendant.

Carrasco gave a verbal description of the young man he had ejected and testified that the same man was the one he saw firing the third shot into the car. He made an in-court

27

identification of defendant as the assailant. The third witness, Santos, a patron of the bar, testified that he saw a young man engaged in an argument with the two older men and that he had seen the young man before and knew him by the name "Petersen."

Defendant made a pretrial motion to suppress all pretrial and courtroom identification, which motion was denied in all respects. On appeal, defendant argues that the pretrial identification of him by de Colon and Carrasco was impermissibly suggestive, that it tainted their in-court identification, and that denial of the pretrial motion therefore violated due process.

 de Colon was shown two photographs of defendant by a police officer on the evening of January 17 and positively identified the defendant as the young man who argued in the bar. The government concedes, as it must, that it was suggestive to have shown the witness only photographs of defendant. Simmons v. United States, 390 U.S. 377, 383 (1968). But a ". . . conviction based upon eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 384. Moreover, testimony of the out-of-court identification is admissible so long as the identification procedure, although suggestive, does not create a very substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 198 (1972).[2]

In Simmons, the Court looked to two factors: the necessity for photographic identification as a method of zeroing in on a suspect of a serious crime still at large, and

---

[2] The same considerations applicable to the admissibility of testimony of the out-of-court identification control the admissibility of the photographs used in that identification. We see no reason why Biggers, which dealt with testimonial evidence, is not equally applicable to demonstrative evidence.

circumstances indicating that the witness had a substantial independent basis for making the identification such that misidentification was not a substantial likelihood. The first factor is clearly present here. de Colon was shown the photographs shortly after defendant had been picked up for questioning. As in Simmons, the inconclusive clues which led to Petersen, here justified an attempt to secure a rapid and concrete identification both ". . . from the standpoint of apprehending offenders and of sparing suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." 390 U.S. at 384.

The second factor was adumbrated in Biggers as requiring an inquiry into five aspects of reliability: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at confrontation, and the length of time between the crime and the confrontation."

de Colon stood within a few feet of the young man in the bar for about 30 minutes. During this time her attention was drawn to him by his engagement in a heated argument with two patrons and his physical ejectment by Carrasco. The photographic identification was made within 48 hours and her identification both in and out of court was positive. The previous day she had reviewed numerous photos but failed to identify any suspects. The description made to police immediately after the shooting paralleled that of defendant with one exception. She described the young man as about 5′6″ in height, while defendant testified, without contradiction, that he is 6′0″ tall. Nevertheless, in the totality of circumstances, there was not a substantial likelihood of misidentification.

▮ Carrasco was taken to the police station shortly after the homicide, but was unable to identify any of the

assailants among several photo albums. On the evening of January 17 he was again brought to the station. Officer Rodriguez met Carrasco near the hallway of the station. As they walked into the investigation bureau, Carrasco stopped abruptly, tapped Rodriguez on the shoulder and told him that the assailant was inside one of the rooms. Rodriguez went back, looked in, and saw Alan Petersen, Sgt. Andre Petersen, Alan's brother, and Patrolman Anthon Christian. Rodriguez then requested Carrasco to view the occupants through a magnified observation hole, but Carrasco explained that the distortion in the magnifying glass prevented him from identifying anyone in the room. Rodriguez then left Carrasco alone in a room, closing the door as he left. Carrasco partially opened the door and later apprised Rodriguez that in doing so he positively identified defendant among a group of five persons in the main office of the bureau.

We disagree with defendant's contention that this sequence of events amounted to a planned showup. On the basis of the testimony of Rodriguez and Carrasco at the suppression hearing, the district court would have been justified in concluding that the presence of Carrasco at the station at the same time as defendant was a chance occurrence. Moreover, even if it were not, whatever suggestion inhered did not create a substantial likelihood of misidentification since our application of the independent reliability factors enunciated in Biggers compels the same conclusion as we reached in connection with de Colon.

There was no error in denial of the suppression motion and admission of testimony of de Colon and Carrasco.

## II. Character Testimony

Defendant has assigned as prejudicial error the district court's refusal to permit testimony which defendant contends was opinion evidence of his character trait for

nonviolence. The portion of the transcript upon which defendant relies is set out below; it occurs during testimony by defendant's alibi witness, Rios, that he and the defendant had baked bread together, then had gone to sleep early in the evening of January 15.

Q. Was this bread that you prepared, prepared in the usual way, the way people bake bread?

A. No.

Q. What was different about it?

MR. MOORE: Your Honor, this might be interesting but I would object to the relevance.

THE COURT: Yes, unless you can tell me where the relevance is.

MR. FARRELLY: May I approach side bar?

THE COURT: Yes.

(Whereupon the following occurred at side bar out of the hearing of the jury.)

MR. FARRELLY: I would like to get some proof in the record about this boy's beliefs he has, and Alan Petersen, about being Rastafarians.

THE COURT: I don't think it has anything to do with the trial.

MR. MOORE: You want to ask this man what Alan's beliefs are?

MR. FARRELLY: We will show he and Alan have discussed things.

THE COURT: Unless you show me the relevance—

MR. FARRELLY: I will attempt to show they reject violence.

MR. MOORE: They also believe—you know what the Rastafarian beliefs are, don't you?

MR. FARRELLY: Well, I am not inquiring deeply, just what these guys believe in.

THE COURT: Well, I'm not going to get into all that.

■ We cannot agree with counsel that this was an inartful attempt to elicit an opinion as to defendant's peaceable character. The colloquy at side bar clearly reveals that counsel sought to put before the jury the religious affiliation and beliefs on both Rios and Petersen. As to Rios, Fed. R. Evid. 610 clearly prohibits such testimony when it is used to enhance the witness' credibility

31

—and no other purpose for its admission has been suggested.

The attempt to elicit this testimony as to Petersen requires further discussion. The law has long permitted a defendant to introduce evidence of a character trait for nonviolence or "peaceableness" as circumstantial evidence negativing the government's case that the accused was the assailant. E.g., 1 J. Wigmore, Evidence § 59 & n.1 (3d ed. 1940). The form of this testimony has been strictly limited, however, to the witness' response to the question, after foundation, of what is the accused's reputation. E.g., J. Weinstein & M. Berger, Evidence, # 405 [02] at 405-20 to 21 (1976).

█ With the advent of the Federal Rules of Evidence in 1975, however, this established formula has been altered to the extent that testimony in the form of an opinion is now admissible to prove a relevant character trait. Fed. R. Evid. 404(a)(1), 405(a). As the Advisory Committee Note to Rule 405 indicates, the rule reflects the reality that reputation evidence has been largely opinion in disguise. But aside from this change, the rule does not recognize any broadening of the form of questioning on direct examination when opinion testimony of character is used as circumstantial evidence. "Opinion testimony in [this situation] ought in general to correspond to reputation testimony as now given, i.e., be confined to the nature and extent of observation and acquaintance upon which the opinion is based." Id.

█ Defendant sought to introduce testimony that Rastafarians believe in nonviolence, that defendant is a Rastafarian and that he holds that belief. This testimony, if believed, would be logically probative of the proposition that defendant acted in conformity with his belief on the night of the homicide which is circumstantial evidence that

defendant was not the assailant. Nevertheless, we believe that this testimony was not legally relevant.

A person may or may not act in accordance with a professed belief; it is the observation of the defendant's *behavior* over a length of time which is the recognized basis for both reputation and opinion testimony. See, e.g., 5 J. Wigmore, Evidence § 1610 (Chadbourn rev. ed. 1974); Ladd, "Credibility Tests—Current Trends," 89 U. Pa. L. Rev. 166, 173–74 (1940). This longstanding limitation reflects an accommodation between logical relevance on the one hand and the desire to avoid prejudice, confusion, surprise and consumption of trial time on the other. We believe that the appropriate means to elicit opinion testimony under the rule is to inquire directly as to the witness' opinion concerning the relevant character trait of the accused. The district court did not err in refusing to admit the proffered testimony.

The judgment of the district court will be affirmed.