UNITED STATES, Appellee

v.

Edward G. BROWN, Staff Sergeant
U.S. Army, Appellant.

No. 93–0580.
CMR No. 9101477.

U.S. Court of Military Appeals.

Argued March 15, 1994.

Decided Sept. 23, 1994.

**2**

For Appellant: *Major Robin L. Hall* (argued); *Colonel Malcolm H. Squires, Jr.,* and *Captain Lawrence W. Andrea* (on brief); *Colonel Stephen D. Smith.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Major Joseph C. Swetnam* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. In an unpublished opinion the Court of Military Review affirmed the findings and took action on the sentence which is the subject of the second granted issue.

We granted review of the following issues:

I

WHETHER MILITARY RULE OF EVIDENCE 610 PREVENTS AN ACCUSED FROM PRESENTING EVIDENCE IN ORDER TO SHOW THAT HE DID NOT USE ILLEGAL DRUGS BECAUSE OF STRONGLY HELD RELIGIOUS BELIEFS AND PRACTICES.

II

WHETHER THE ARMY COURT'S AFFIRMANCE OF APPELLANT'S SENTENCE WAS ERRONEOUS WHERE TWO OF THE THREE JUDGES DISSENTED WITH REGARD TO THE SENTENCE.

The prosecution case rested on a positive urinalysis. Appellant denied knowingly ingesting drugs. The defense requested that appellant's wife and his battalion chaplain (Chaplain Morton) be brought to Fort Lee, Virginia, from Germany to testify that use of drugs would be contrary to appellant's strongly held religious beliefs. Defense counsel had not talked with Mrs. Brown, but the military judge accepted the defense representations regarding her expected testimony.

The defense argued that the requested testimony pertained to "a pertinent trait of the character of the accused" under Mil. R.Evid. 404(a)(1), Manual for Courts–Martial, United States, 1984. The prosecution argued that appellant's religious opposition to drug use was irrelevant. The military judge denied the request for Mrs. Brown based on relevance and Mil.R.Evid. 610. He denied the request for Chaplain Morton on the ground that his testimony would contravene Mil.R.Evid. 610.

Mil.R.Evid. 610 is virtually identical to Fed.R.Evid. 610, both of which similarly provide as follows:

> Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the credibility of the witness is impaired or enhanced.

During the defense case on the merits, appellant testified that he does not use drugs or alcohol and suggested that he might have unknowingly ingested drugs in a weight-loss medication obtained from a German pharmacy. Defense counsel asked appellant when he stopped using alcohol and appellant responded, "[W]hen I accepted the Lord Jesus as my savior." Trial counsel objected, apparently based on the military judge's earlier ruling about evidence of religious beliefs, and defense counsel shifted away from appellant's beliefs without a ruling from the military judge.

The defense presented several witnesses who attested to appellant's reputation for truthfulness. Sergeant First Class Dugger, who knew appellant previously in Germany, testified that appellant is a truthful person and that he was "shocked" when appellant

tested positive on the urinalysis. First Lieutenant Abb, a member of appellant's unit in Germany, testified that appellant has a good reputation for truth and veracity and that he would believe appellant if appellant denied knowingly using drugs. Chaplain Sapp, a Fort Lee chaplain, knew appellant for about 75 days prior to trial. He testified that appellant was dependable and truthful.

A memorandum from Chaplain Morton, the battalion chaplain for appellant's unit in Germany, was received in evidence. Chaplain Morton had known appellant from August of 1989 until the trial, in March and April of 1991. His memorandum states, "Surely this must have been a 'false positive,' because it is so very much out of character for this soldier." The memorandum concludes by stating, "I just cannot imagine SSG Brown becoming involved in this kind of activity. It is just too much out of character for him to have done something like this which would not only jeopardies [sic] his military career, but would compromise his Christian witness."

Trial counsel objected on the ground that the "letter is primarily based on his religious beliefs and character and that's under Rule 610." The military judge ruled, "I can set aside the consideration that purports to be strictly to his religious beliefs, but I will admit the document for the remainder...."

A stipulation of the expected testimony of Mrs. Brown recites that appellant "only attends social functions which do not serve alcohol or unit activities." Mrs. Brown's stipulated testimony further recites that she "was raised not to drink alcohol," that she disapproves of drinking alcohol, and that she had not seen her husband consume alcohol for 6 years. Her stipulated testimony recites, "My husband and myself strongly discourage our children from drinking alcohol and using drugs."

A letter from a lay leader in appellant's church, requesting that he be excused "from the mandatory NCO Ball" on religious grounds, was withdrawn by defense counsel because it "makes no sense based on the court's ruling on [Mil.R.Evid.] 610 earlier."

■ We hold that the military judge erred. Mil.R.Evid. 610 prohibits impeaching or rehabilitating a witness with evidence of religious opinions or beliefs. It does not prohibit all mention of religion or religious matters. S. Saltzburg, L.Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 684 (3d ed.1991). For example, inquiry into religious affiliation may be permissible to show bias in a particular case. *See* Advisory Committee's Note, Fed.R.Evid. 610. To the extent that religious beliefs may be critical to the defense of a case, there may be a Constitutional basis for their admission. Drafters' Analysis of Mil.R.Evid. 610, Manual, *supra* at A22–43 (Change 2).

Like its civilian counterpart, Mil.R.Evid. 610 "rests upon grounds of relevancy, policy, and a concern to avoid time-consuming collateral inquiry which holds out little promise of turning up useful information." D. Louisell and C. Mueller, 3 *Federal Evidence* § 328 at 384 (1979). The underlying basis for Mil.R.Evid. 610 is "a national ideal of religious freedom and toleration, and of personal privacy." *Id.* at 385.

■ Evidence of an accused's religious affiliation requires a double inference to be relevant as a matter in defense. The trier of fact must first infer that the accused has adopted a particular belief and then infer further that the accused acted in accordance with that belief. The probative value of such evidence is too low to pass the test of legal relevance under Mil.R.Evid. 403. *See Government of the Virgin Islands v. Petersen*, 553 F.2d 324, 329 (3d Cir.1977) (Evidence of defendant's religious affiliation is "not legally relevant. A person may or may not act in accordance with a professed belief....")

■ In appellant's case there was no attempt to introduce evidence of appellant's religious affiliation or the beliefs of a particular religious group. Instead, appellant attempted to introduce precisely the type of evidence contemplated in *Petersen:* character evidence, based on the witness' observation of appellant's behavior, that appellant behaved in a certain manner because of his personal, deeply held religious beliefs. *See Government of Virgin Islands v. Petersen*,

*supra* ("[I]t is the observation of the defendant's behavior over a length of time which is the recognized basis for both reputation and opinion testimony ... [T]he appropriate means to elicit opinion testimony under the rule is to inquire directly as to the witness' opinion concerning the relevant character trait of the accused.").

In this case there would have been no invasion of appellant's privacy because he was the proponent of the evidence. The evidence did not involve a mere collateral matter, *e.g.*, credibility, but went to the heart of appellant's defense. The evidence was not merely evidence of appellant's religious affiliation, as in *Government of Virgin Islands v. Petersen, supra*, but of his personal moral convictions. In short, none of the relevancy, policy, or privacy considerations underlying Mil.R.Evid. 610 would have been compromised by admission of the evidence.

■   Mil.R.Evid. 404(a) favors the accused. The prosecution is not permitted to introduce, except in rebuttal, "[e]vidence of a person's character or a trait of a person's character ... for the purpose of proving that the person acted in conformity therewith on a particular occasion"; but an accused is entitled to present "[e]vidence of a pertinent trait of ... character...." Mil.R.Evid. 404(a)(1). In a drug case, an accused is entitled to present evidence of being a good soldier or a law-abiding person. *United States v. Vandelinder*, 20 MJ 41 (CMA 1985); *United States v. Clemons*, 16 MJ 44 (CMA 1983). We hold that evidence of appellant's strong opposition to the use of drugs and alcohol as a matter of religious principle is character evidence permitted by Mil.R.Evid. 404(a)(1). We hold further that it was sufficiently probative in this case to be legally relevant under Mil.R.Evid. 403 and was not prohibited by Mil.R.Evid. 610.

Appellant sought to admit evidence of his religious beliefs as part and parcel of his "good soldier" defense. The evidence was not proffered merely to show that appellant was a truthful witness; it was offered to show that drug use was inconsistent with appellant's character. The evidence was not mere credibility evidence; it would have been admissible whether appellant testified.

■   We need not decide whether appellant's defense would have been stronger if his request for the personal testimony of Chaplain Morton had been granted. It was clear from the military judge's ruling that he would not consider evidence that appellant's opposition to using drugs and alcohol was based on his personal religious beliefs. We think it self-evident that opposition to drug use on the basis of deeply held personal moral convictions would make appellant less likely to have used drugs than opposition based merely on fear of punishment or disapproval. We hold that the military judge abused his discretion by misapplying Mil. R.Evid. 610 and thereby refusing to consider the fundamental premise on which appellant's defense was based. Under the circumstances of this case, we find a reasonable likelihood that appellant was prejudiced by the military judge's overly broad application of Mil.R.Evid. 610.

The military judge's erroneous ruling precluded appellant from presenting a defense based on evidence of pertinent character traits under Mil.R.Evid. 404(a)(1). This was an error of Constitutional dimension, going to the heart of appellant's defense. We are unable to conclude beyond a reasonable doubt that the error was harmless. Accordingly, the conviction and sentence must be set aside.

■   It is necessary for us to resolve Issue II in order to determine the maximum imposable sentence if a rehearing is ordered. *See* RCM 810(d)(1), Manual, *supra*. After reviewing the opinion of the Court of Military Review and the arguments of both sides, we are satisfied that the Court of Military Review affirmed the findings and the approved sentence. Senior Judge Naughton's lead opinion concludes with the following unambiguous decretal sentence: "The findings of guilty and the sentence are affirmed." Unpub. op. at 2. Judge Baker agreed with Senior Judge Naughton's opinion on the findings, but found the sentence too severe. He concluded his opinion by stating, "I would affirm the findings of the approved guilty,

but reassess the sentence to include only a reduction to the rank of Specialist E4, and forfeiture of $600.00 pay per month for two months." Unpub. op. at 2.

The controversy in this case arises from Judge Johnston's opinion. Judge Johnston disagreed with Senior Judge Naughton and Judge Baker regarding the findings. He concluded his opinion by stating, "I would set aside the conviction and order a rehearing." He added the following footnote: "If the military judge had heard and evaluated the appellant's credibility defense, and rejected it, I would agree with Senior Judge Naughton's view that the sentence is appropriate." Unpub. op. at 4.

Appellant argues that Judge Johnston did not vote to affirm the sentence. The Government argues that Judge Johnston "recognized ... that he was outvoted," and "reviewed the sentence and agreed with the adjudged sentence." Letter Answer. Our review of the unambiguous decretal sentence in the lead opinion and Judge Johnston's footnote leads us to agree with the Government.

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judges COX and WISS concur.

SULLIVAN, Chief Judge (concurring):

I concur with Judge Gierke's opinion. In my view, appellant was prevented from putting on a critical part of his defense. *See United States v. Rankins*, 34 MJ 326, 331 (CMA 1992) (Sullivan, C.J., dissenting). Testimony that he was a religious, law-abiding man who abstained from using drugs and alcohol is relevant character evidence. *Cf. United States v. Thomas*, 40 MJ 252 (CMA 1994).

CRAWFORD, Judge (dissenting):

The majority holds reversal is required of the decision below affirming the results of appellant's trial by judge alone for two rea-

sons: First, the judge excluded testimony that appellant was

a dedicated Christian and is very involved with his church.... It is just too much out of character for him to have done something like this which would not only jeopardies [sic] his military career, but would compromise his christian witness.

Second, the judge's ruling on the above testimony caused the defense to withdraw a letter from his lay leader that appellant had "high moral standards" and requested he "be exempted from the mandatory NCO Ball."

I dissent from the majority opinion because it (A) fails to set forth a standard of review; (B) appears to misapply the character evidence rules—Mil.R.Evid. 404(a) and 405, Manual for Courts–Martial, United States, 1984; (C) appears to misconstrue Mil. R.Evid. 610; and (D) does not apply the harmless-error doctrine.

I would hold that the standard of review is whether the judge abused his discretion in refusing to admit the evidence. For reasons discussed herein I would hold that the trial judge did not abuse his discretion. In the alternative, even assuming error, it was harmless under the facts of this case.

FACTS

Prior to trial, the Government acceded to a defense request to return appellant's first line supervisor, Lieutenant William R. Abb, from Kitzengen, Federal Republic of Germany, to be available to testify as a defense witness at trial. I will discuss the importance of his testimony below.

Prior to trial at a session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), on March 20, 1991, defense counsel announced that the defense strategy to rebut the "hard evidence presented by the prosecution" would be the "good soldier defense." To support this strategy the defense asked for production of two additional defense witnesses, Chaplain Mitchell L. Morton and appellant's wife. At trial the defense asserted these witnesses were important to show appellant's character:

I hate to say in the vernacular—Jesus defense where a man gets in trouble and runs down and finds the lord. I feel that it is important that the court see this, that this man is an on-going Christian and that these—his acts are totally inconsistent with his daily life and that's why we've requested his presence....

At another Article 39(a) session on April 2, 1991, defense counsel noted that he had not talked to Mrs. Brown, but made reference to a summary of her testimony. The judge denied the defense motion to transport these two witnesses from Germany to the United States for the trial. The judge based his ruling on the conclusions that the defense did not make a showing of sufficient relevance and necessity for the witnesses and that some of their testimony was bolstering prohibited by Mil.R.Evid. 610.

At trial on April 10, 1991, after the Government's case-in-chief, appellant testified and was followed by four character witnesses who all testified as to appellant's truthfulness, good character, and evidence concerning specific instances of good conduct.

The first witness was Sergeant First Class Dugger from Fort Lee, Virginia, who knew the accused in Ansbach, Germany, between 1983 and 1987 in a duty and non-duty position. He never knew appellant to use a controlled substance. In fact he was "surprised," "shocked," "dismayed" and "in total disbelief" as to the charge in this case. He had "never heard anybody ever" talk about appellant's using any kind of drugs, including alcohol.

The next defense witness, transported from Kitzengen, Federal Republic of Germany, upon defense request, was LT. Abb, who served as the battalion's dining facility officer and food service officer. Since May 1990, he was appellant's first line supervisor and had daily contact and saw him up to 4 hours a day while in the field. He testified that he had never seen the accused under the influence of alcohol.

LT. Abb further testified:

Q. In the unit you've observed Brown perform his functions?

A. I've always known that—even in the time that I didn't immediately or wasn't his first line supervisor I knew that he was doing the job because the dining facility had improved. I was still in Headquarters Company with him and I knew that things had greatly improved from his replacing Sergeant Neal.

Q. Were you in a position to know what Brown's reputation was for truth and veracity in his unit?

A. I knew that he had a very solid reputation in the dining facility and within the company and there was never any doubt, even though he was outranked by other people in that facility everyone knew that he was in charge and everyone knew that he was put in the position and he was fully backed by the chain of command.

Q. Did you ever on any occasion find Brown to fall below the conduct standards that you expect in a noncommissioned officer of the United States Army?

A. Never. The only thing that I ever found any fault in Sergeant Brown's character in the performance of his duties was that—and I would go round and round with him about neglecting some of the PT, but that was simply a matter of problems with time and I wanted to make sure that he didn't have any problems meeting the weight requirements for the course that he had ahead of him.

\* \* \*

Q. When you were informed of Brown being brought up on charges how did this hit you?

A. I couldn't believe it. It was completely inconsistent with anything that I knew about Sergeant Brown's character and his duty performance.

\* \* \*

Q. Knowing Brown has come back with a positive urinalysis and knowing the character of Brown, at face alone, what is your opinion of Brown's character now?

A. Well, in my mind it still has not been proven that Sergeant Brown used drugs and until that is proven to me I'm going to continue to hold the same opinion of his character that I do and that is that

he's a professional NCO and that if he comes back to Kitzengen he's going to fall back into place and we're going to continue where we left off.

Q. The long and short is that you believe Brown?

A. I believe Brown. Yes.

The third witness was appellant's team chief at Fort Lee, Sergeant First Class Michael Lewis, who testified appellant was truthful and never "exhibit[ed] any characteristics inconsistent with a professional performance."

The fourth witness was Captain (Chaplain) Roger W. Sapp. He testified as follows:

Q. How did he perform as a soldier when he was under your supervision?

A. Great. Lots of initiative, no problems with supervision. Never had a problem with him at all. In fact he—like I said, accountability was the thing that impressed me about him. He was much more accountable than accountable than [sic] normally you would see an NCO do. He always was—always making me aware of what he had to do, where he was going to be at certain times, when he would be back. That sort of thing.

Q. And was he?

A. Certainly, yes.

Q. Now, did Brown ever exhibit any characteristic which would make him undependable as a soldier?

A. I see nothing in his character that would make me feel that way.

Q. Did he ever miss a performance for you or say, a scheduled time to be with you?

A. No. No, he was totally dependable.

Q. When he showed up at these times, was he always in a condition that he could perform his mission?

A. I'd never seen anything that I would consider any kind of impairment.

Q. And this was throughout the entire time?

A. The entire time.

The defense proposed to introduce evidence from three additional witnesses. The first was a written statement of Chaplain Morton. The proposed testimony of Chaplain Morton was as follows:

1. I was totally shocked to learn of the pending court martial of SSG Brown because of coming up positive for a urine test while attending the NCO Academy at Fort Lee, Virginia. Surely this must have been a "false positive", because it is so very much out of character for this soldier.

2. I have know SSG Brown since he came to work in the battalion dining facility in August of 1989. He is a dedicated christian and is very involved with his church. During our battalion prayer breakfasts SSG Brown was always extremely helpful and consistently made sure that the breakfast was of first rate quality. He felt that this was a part of his ministry.

3. SSG Brown has a wonderful, supportive family with two fine children. He has given untiring service to the military for the past 14 years with an outstanding service record. I just cannot imagine SSG Brown becoming involved in this kind of activity. It is just too much out of character for him to have done something like this which would not only jeopardies [sic] his military career, but would compromise his christian witness.

Defense counsel emphasized that this statement was important to

show that the true character of this soldier is not only so out of character with the offense of which he is charged but it is out of character which he has set for himself which is over and above his peers on a daily basis as far as a moral obligation and a—religious beliefs....

Although the judge had ruled that he would not bring Chaplain Morton from Germany to testify, he did admit Morton's written statement. In his ruling the judge stated that he could "set aside the consideration that purports to be strictly to his religious beliefs, but I will admit the document for the remainder...."

The second witness was appellant's wife. Appellant sought to introduce a stipulation concerning her testimony as follows [signatures omitted]:

8

DEPARTMENT OF THE ARMY
First Judicial Circuit
Fort Lee, Virginia  23801

United States                        )
                                     )        Stipulation of Fact
        v.                           )
                                     )          9 April 1991
Staff Edward G. Brown                )
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                          )
Noncommissioned Officers Academy     )
Fort Lee, Virginia  23801            )

It is hereby stipulated, by and between the defense counsel and the trial counsel, with the express consent of the accused, that Mrs. Virgie Brown would testify to the following under oath:

1.  I am Mrs. Virgie Brown, the wife of SSG Edward G. Brown. We have been married for over thirteen (13) years.  My husband helps me raise my fifteen (15) year old daughter and our six year old child.  My children and my self are financially dependent on my husband even though I have a job in a mess hall.  I love my husband very much and will stand by him even if he goes to jail.

2.  While off duty my husband and I watch TV and ocassionally walk to a nearby park.  He only attends social functions which do not serve alcohol or unit activities.  My husband did not go to clubs or stay out late at night during our marriage.

3.  I do not drink alcohol because I was raised not to drink alcohol.  My parents never drank alcohol and did not permit me to drink alcohol.  I strongly disapprove the drinking of alcohol.  I have not seen my husband consume alcohol in the past six years.  My husband and myself strongly discourage our children from drinking alcohol and using drugs.

4.  In my opinion, I do not believe my husband would jeopardize his career and the welfare of our family by using cocaine.  I have never used any drugs.  I have never associated or knew any one who I know used cocaine.  I have never seen my husband use any type of drugs and I did not notice any behavior changes in my husband.  My husband received a prescription from a german doctor in September 1990 for losing weight.  He began taking these pills and riding his bicycle approximately 50 to 60 kilometers each day.  My husband lost around 30 pounds as a result of his efforts.  My husband continued to work and support his family, he didn't even take leave before coming to Fort Lee

Defense Exhibit XXX
for Identification

The judge admitted this entire document.    The defense withdrew the defense exhibit which read as follows:

**UNITED PENTECOSTAL CHURCH**
Pentecostal Church of Deliverance
Illesheim, FRG

10 December 1986

1SG Romero
C Btry 2-28 FA BN
APO NY NY  09177

Dear 1SG Romero:

As a member of the United Pentecostal Church in Illesheim, SSG Edward Brown has displayed very high moral standards.  In his daily character he has upheld personal convictions that may have drawn the critism of many.

In respect of this, request that SSG Edward Brown be exempted from the mandatory NCO Ball sponsored by your unit.

I trust that you will honor this request in light of the display of his flawless character.

Sincerely,

Anthony A. Kaauamo
UPCI Layleader

---

(A)

The appropriate standard of review is "that the trial court has great latitude in determining the admissibility of evidence [under Fed.R.Evid. 610] and its rulings will be upheld unless there is a clear abuse of discretion." *Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 84 (2d Cir.1982).

(B)

Next, I will discuss methods of introducing and proving character evidence.

Mil.R.Evid. 404(a) is verbatim as follows:

*Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) *Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same[.]

**10**

Mil.R.Evid. 405 sets forth the following methods of providing character evidence:

(a) *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of an offense or defense, proof may also be made of specific instances of the person's conduct.

There are three possible categories of character evidence: reputation evidence, opinion evidence, and evidence of specific acts. This case involves the first two categories. A witness may testify as to appellant's reputation for a pertinent character trait if the witness resided and worked in the same military or civilian community as appellant and has been in the community long enough either to be familiar with appellant's reputation or to form an opinion as to the pertinent character trait. *See United States v. Toro,* 37 MJ 313, 317 (CMA 1993), *cert. denied,* — U.S. —, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994); *United States v. Tomchek,* 4 MJ 66 (CMA 1977). Based upon the record before us I question whether the defense has laid an adequate foundation for Captain Morton to be familiar with appellant at the dining facility. In any event the defense sought to have Captain Morton testify expansively beyond evidence of a pertinent character trait to include appellant's religious beliefs.

### (C)

In addition to admitting evidence of a character trait, references were made to appellant being a "dedicated christian ... very involved with his church." The question is whether that evidence in prohibited under the rules of evidence.

Mil.R.Evid. 610 is almost identical to its Federal counterpart. It provides:

Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the credibility of the witness is impaired or enhanced.

Rule 610 originally appeared in 1942 in the Model Code of Evidence. At that time there was little in the way of jurisprudence concerning the Religion Clauses in the First Amendment. Since then the Court in *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), stated:

Candor compels acknowledgement, moreover, that we can only dimly perceive the lines of demarcation in this extra-ordinarily sensitive area of constitutional law.

The language of the Religion Clauses of the First Amendment is at best opaque, particularly when compared with other portions of the Amendment.

The Advisory Committee notes to Fed. R.Evid. 610 show little was done to restructure the 1942 rule based upon the jurisprudence concerning the notion of separation of church and state that had been fashioned since that period of time.

The rule prohibits both impeaching or enhancing a witness' credibility with evidence of religious opinions or beliefs. In this case the majority recognizes that the defense was seeking to enhance the character evidence because of "a matter of religious principle" and that "religious beliefs" were "part and parcel" of good character. 41 MJ at 4. However, Mil.R.Evid. 610 has mirror images. Here evidence was sought to be introduced to enhance good character evidence. One must ask whether the same evidence can be introduced to show evidence of bad character, especially where some religions permit the use of drugs. *United States v. Thomas,* 40 MJ 252 (CMA 1994). The answer should

be no. The majority seeks to avoid the application of Mil.R.Evid. 610 by indicating it is "part and parcel" of good character evidence. 41 MJ at 4. But I submit that is all too simple a solution to this case. Here, although I believe it was the responsibility of the defense to omit references to appellant's religious beliefs, the judge excised these references in admitting the remainder of Chaplain Morton's written statement.

*Government of the Virgin Islands v. Petersen*, 553 F.2d 324, 328 (3d Cir.1977), cited by the majority, compels a result different from that reached by the majority. The following exchange took place between counsel and the judge in *Petersen:*

Q. Was this bread that you prepared, prepared in the usual way, the way people bake bread?

A. No.

Q. What was different about it?

MR. MOORE: Your Honor, this might be interesting but I would object to the relevance.

THE COURT: Yes, unless you can tell me where the relevance is. ·

MR. FARRELLY: May I approach side bar?

THE COURT: Yes.

(Whereupon the following occurred at side bar out of the hearing of the jury.)

MR. FARRELLY: I would like to get some proof in the record about this boy's beliefs he has, and Alan [sic] Petersen, about being Rastafarians.

THE COURT: I don't think it has anything to do with the trial.

MR. MOORE: You want to ask this man what Alan's beliefs are?

MR. FARRELLY: We will show he and Alan have discussed things.

THE COURT: Unless you show me the relevance—

MR. FARRELLY: I will attempt to show they reject violence.

MR. MOORE: They also believe—you know what the Rastafarian beliefs are, don't you?

MR. FARRELLY: Well, I am not inquiring deeply, just what these guys believe in.

THE COURT: Well, I'm not going to get into all that.

The court indicated that, while the Rastafarian beliefs would be logically probative, they are not legally relevant. The court stated:

Defendant sought to introduce testimony that Rastafarians believe in nonviolence, that defendant is a Rastafarian and that he holds that belief. This testimony, if believed, would be logically probative of the proposition that defendant acted in conformity with his belief on the night of the homicide which is circumstantial evidence that defendant was not the assailant. Nevertheless, we believe that this testimony was not legally relevant.

A person may or may not act in accordance with a professed belief; it is the observation of the defendant's *behavior* over a length of time which is the recognized basis for both reputation and opinion testimony. *See, e.g.,* 5 J. Wigmore, *Evidence* § 1610 (Chadbourn rev. ed.1974); Ladd, "Credibility Tests—Current Trends," 89 *U.Pa.L.Rev.* 166, 173–74 (1940). This longstanding limitation reflects an accommodation between logical relevance on the one hand and the desire to avoid prejudice, confusion, surprise and consumption of trial time on the other. We believe that the appropriate means to elicit opinion testimony under the rule is to inquire directly as to the witness' opinion concerning the relevant character trait of the accused. The district court did not err in refusing to admit the proffered testimony.

*Id.* at 329.

The issue should focus on the pertinent character trait and not on whether a person has a particular religious belief. The majority focuses on general good character evidence without discussing the pros and cons and the history behind the rules. Drafter's Analysis of Mil.R.Evid. 404(a)(2), Manual, *supra* at A22–32 (Change 2). A corollary to the majority's ruling in this case would be to require the Government to transport Captain Morton and appellant's lay leader to the situs of the trial. RCM 703, Manual, *supra.* Be-

fore expanding the concept of good character evidence it would be prudent for the Court to look at the history behind Mil.R.Evid. 610 and its impact on a worldwide criminal justice system.

Additionally, I believe it is dangerous and unwise to argue that there is a correlation between general character evidence and a person's religious beliefs. First, let us consider the mirror image of the majority's "part and parcel" argument. May someone be cross-examined or impeached on his or her religious beliefs if those beliefs are part and parcel of character evidence? Second, what importance or status should trial courts confer upon unorthodox religious convictions be they agnosticism or atheism. It seems unwise to have a correlation between a religious belief or the lack of a religious belief and lawabidingness or veracity. Just as in *Petersen*, cited by the majority, religious beliefs of witnesses should not be admissible to enhance credibility *or* to enhance character evidence of a pertinent character trait. To hold otherwise, in my view, misreads *Petersen*.

### (D) Harmless Error

While I do not agree with my colleagues that the judge erred in this case, even assuming error it is hard to find prejudice here. All of Chaplain Morton's testimony was ad-mitted except that portion which related to religious beliefs. Second, all of appellant's wife's stipulation testimony was admitted. Third, while defense counsel indicated he withdrew the Exhibit because of the prior ruling, one can see that its value was questionable. Fourth, the Government agreed prior to trial to return LT. Abb, appellant's first line supervisor, from Germany to the situs of the trial. LT. Abb knew appellant for a number of months prior to trial, a much closer relationship than appellant had with Chaplain Morton. Additionally, the defense did not contest the chain of custody or the testimony from the government expert that appellant's laboratory report showed a 1300–nanograms reading compared to the threshold level of 150 nanograms. Appellant called three other character witnesses who not only testified as to his truthfulness but gave extensive testimony as to his good character and were allowed to testify as to specific instances of conduct. Their testimony was more extensive than the testimony excluded by the judge.

Under the facts of this case I would hold there was not an abuse of discretion. However, even assuming error by the judge, it did not prejudice a substantial right of the accused. Art. 59(a), UCMJ, 10 USC § 859(a). I would affirm the decision below.