UNITED STATES, Appellee

v.

Michael G. PELKEY, Sergeant
First Class, United States
Army, Appellant.

No. 96–0013.
Crim.App. No. 9400692.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 6, 1996.

Decided March 19, 1997.

For Appellant: *David R. Dowell* (argued).

For Appellee: *Captain Robert F. Resnick* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak, Major Anthony P. Nicastro,* and *Captain Nancy A. Nollmann* (on brief); *Captain Eugene E. Baime.*

*Opinion of the Court*

SULLIVAN, Judge:

During March and April of 1994, appellant was tried by a general court-martial com-

posed of officer and enlisted members at Fort Carson, Colorado. He pleaded guilty to the involuntary manslaughter of his wife but, after a contested trial, was found guilty of her intentional (unpremeditated) murder, in violation of Article 118(2), Uniform Code of Military Justice, 10 USC § 918(2). Pursuant to his pleas, appellant was also found guilty of impeding an investigation, abusing a corpse, and adultery, in violation of Article 134, UCMJ, 10 USC § 934. He was sentenced to a dishonorable discharge, confinement for life, and reduction to Private E–1. The convening authority approved the sentence on September 15, 1994, and the Court of Criminal Appeals affirmed in an unpublished opinion dated September 21, 1995.

On May 9, 1996, this Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING APPELLANT THE OPPORTUNITY TO PRESENT EVIDENCE CONCERNING DIANE PELKEY'S SUICIDE ATTEMPT.

We hold that because the military judge's decision to exclude certain defense evidence under Mil.R.Evid. 403, Manual for Courts–Martial, United States, 1984 (1994 ed.), was not final, he did not deny appellant an opportunity to present defense evidence that he saved his wife's life 3 months before he allegedly murdered her. *See United States v. Manos*, 848 F.2d 1427, 1430 (7th Cir.1988). The judge qualified his exclusion ruling by stating, "I would exclude the evidence. I'll listen to an argument if you want to put it in, but if you do put it in, I'm going to give the government an opportunity to explain the motive." In our view, this ruling did not violate the Constitution, the Code, or any military evidentiary rule. *See generally United States v. Garcia*, 44 MJ 27 (1996); *see also United States v. Ruth*, 46 MJ 1 (1997).

Appellant was charged with the premeditated murder of his wife, Diane L. Pelkey, in violation of Article 118(1). He earlier had pleaded guilty to the lesser-included offense of involuntary manslaughter, in violation of Article 119(b)(2), UCMJ, 10 USC § 919(b)(2).

In accordance with that plea, he admitted that his wife was dead, that her death resulted from his committing an assault and battery upon her, and that his assault upon her was unlawful. Appellant also admitted that he unintentionally choked his wife to death while awkwardly struggling with her in his car in a remote area of the woods. The Government, nevertheless, proceeded to try him for the premeditated murder or the intentional murder of his wife. The members found him not guilty of premeditated murder but guilty of intentional murder (unpremeditated) in violation of Article 118(2).

Prior to trial, defense counsel moved for the military judge to admit certain evidence showing that appellant had saved his wife's life after her suicide attempt in July of 1993, 3 months before her alleged murder. The record states:

ADC: She took a large quantity of prescription medication that had been given to Sergeant First Class Pelkey. She combined that with alcohol. She did that in the family home. It was Sergeant First Class Pelkey who discovered her. He basically picked her up, dragged her into the car, and took her to the hospital himself. And essentially, the evidence would show that she was in serious condition. She was in the hospital for approximately 4 days. *Obviously, sir, it's our belief that that evidence is relevant on the issue of premeditation.* The government believes that Sergeant First Class [Pelkey] had been planning the death of his wife, so here's the perfect opportunity to do that, and he took her to the hospital and saved her life. Yet 4 months later, he carries out some sort of plan to kill her.

MJ: Okay, so the relevance is 4 months prior, the accused had essentially saved her life.

ADC: Yes, sir.

MJ: Okay.

ADC: Well, it's in July, sir, so 3 months, sir.

MJ: Well, okay, 3 months; I'm sorry. Prosecution, what's your position?

TC: Your Honor, our position is it's simply not relevant under Rule 401. What hap-

pened 3 months ago is not relevant to whether or not on the night of the 8th of October Sergeant Pelkey formed the specific intent to kill his wife.

* * *

ADC: We believe, in our discussion with practically every witness, that it was in June after Sergeant First Class Pelkey's return to the field that he changed dramatically and that the relationship took a turn for the worse. It was not in July, as the government argues, but sooner, in June; and that in July, *that was one of the worst periods of time for the relationship. Yet, during that very down period is the time that Sergeant First Class Pelkey essentially saved her life by taking her to the hospital. We believe obviously that's relevant toward the issue of premeditation.* If there was some grand scheme or design in the works, why is he going to at that point save her life during the period of time their marriage is almost at its worst?

MJ: I gather from what I have heard so far in our pretrial sessions—and I mean those on the record—*that the government's case essentially is going to be one of building a motive or—well, circumstantially, to establish premeditation by a long-term series of events.* Am I——

ATC: *That's correct, sir.*

* * *

MJ: All right. Given that understanding, *I think the fact that 3 to 4 months prior he took steps to save her would tend to negate this long-term buildup to some——admittedly,* its relevance can be overcome by the government by——not its relevance, but its effect—by the fact that it had built up after this event occurred. But I think the defense has a right to have that evidence in, and I will permit it. Any questions along those lines?

(Emphasis added.)

Later on, the military judge made a further ruling on the defense request, as follows:

DC: No other motions, Your Honor. However, we would like to discuss the suicide attempt and whether or not our admission of the stipulation of fact to that effect would open the door to the government bringing in—as Major Anderson stated in an 802, *they plan to or were going to try to get into evidence of some physical abuse to show that the reason he saved her life that day was because he felt guilty about it and that they plan to bring in statements of that physical abuse.* You've already ruled that physical abuse would not be allowed under 403 unless we opened the door. We don't believe that it's a reasonable inference to say that the reason he saved her life that day was because he felt guilty over something and that we should be allowed to raise the issue of the suicide and discuss that issue without opening the door to any types of physical violation that occurred between the family.

MJ: Well, you're going to infer from it that it was because he loved her and wanted her to live; right? That's what you're going to infer.

DC: Sir, we're going to—as you said prior when we litigated this issue before, *we're going to use it to show intent, that it negated his intent, any intent of [sic] premeditation.*

* * *

MJ: Well, looking at the whole evidence, now, as presented in the prosecution's case and the prosecution theory, given that the issue of premeditation is closer to the question of motive than intent—it involves the formation of an intent to kill plus consideration of that intent for whatever period of time—*I believe that if the evidence of the suicide comes in to create the inference that it was because he had no motive, if you will, I don't think it's too remote to deal with the issue of intent that then the government would be justified in bringing in evidence that his motive was not because he didn't have some predisposition to kill his wife, but it was other than that on this particular occasion.* As I see the government's case, their attempt has been to build evidence of a breakdown in the marriage, which rose to the level of a

premeditation at some later time closer to the date of Diane Pelkey's death on the 8th of October. We're dealing with a suicide attempt in July, which is far too remote. I will say at this point that the chances of confusion on the issue of intent and premeditation are so great that under 403, *I would exclude this evidence of the suicide attempt that you have in your stipulation anyway.* I realize there's been reference to this suicide attempt. To the best of my recollection, it hasn't been discussed at great length, and I'm not sure any confusion has been created in the court's mind, but I think that now to go into it, we would be dealing with a collateral issue that would be just confusing to the members, *and I would exclude the evidence. I'll listen to an argument if you want to put it in, but if you do put it in, I'm going to give the government an opportunity to explain the motive.*

DC: *So, Your Honor, just to clarify, you're excluding that evidence?*

MJ: *Yes, I am.*

DC: *So, the government, in their closing, will not be able to refer to that, also.*

MJ: *Absolutely not.*

DC: All right, sir. I don't believe we have anything further.

(Emphasis added.)

— — —

Our starting point in resolving this appeal is to clearly identify the defense evidence that appellant claims he was denied an opportunity to present at his trial. The assigned issue refers generally to evidence concerning Diane Pelkey's attempted suicide. The supporting brief, however, makes clear that the defense evidence at issue is testimony or documents showing that appellant saved his wife's life when she attempted to commit suicide in July of 1993. The record also shows that this life-saving act by appellant occurred about 3 months before he admittedly killed his wife on October 8, 1993.

Our next step is to determine the purpose for which the defense offered this evidence at trial. *See* Mil.R.Evid. 401 and 402. Although appellant admitted that he killed his wife, he denied that he did so with premedi-

tation or a specific intent to kill or seriously injure her. *Compare* Art. 118 *with* Art. 119. Appellate defense counsel generally asserts that the above-noted evidence was offered to show that appellant did not premeditate or specifically intend to kill his wife 3 months later on October 8, 1993. He particularly argues that such conduct circumstantially shows appellant's "deeply held religious principles" and "his immediate concern for his wife." He also contends that from these character traits it can further be inferred that appellant "is not the type of person to commit murder." Appellate defense counsel cites the decision of this Court in *United States v. Brown*, 41 MJ 1 (1994), as authority for his argument that the denial of this type of defense evidence was constitutional and evidentiary error requiring reversal of appellant's conviction.

Our initial response to this argument is that an important distinction exists between appellant's case and *United States v. Brown, supra.* In *Brown*, the defense sought to introduce testimony from the accused's wife and battalion chaplain that the "use of drugs would be contrary to [the accused's] strongly held religious belief." *Id.* at 2. This evidence was offered as character evidence to show that the accused did not knowingly use drugs, *i.e.*, that he acted in conformity with this character trait on a particular occasion. Moreover, this character evidence was in the form of reputation and opinion testimony (*see* Mil.R.Evid. 405(a)) and was found to be admissible on behalf of the accused under Mil. R.Evid. 404(a)(1)(good character trait evidence admissible on behalf of accused where character trait pertinent to charged offense). *See generally United States v. Vandelinder*, 20 MJ 41 (CMA 1985); *United States v. Piatt*, 17 MJ 442 (CMA 1984).

In appellant's case, the evidence that he saved his wife's life was not formally offered as good character evidence tending to show he did not intentionally kill his wife on October 8, 1993. *See* Mil.R.Evid. 404(a). Moreover, this specific good conduct evidence certainly was not reputation or opinion evidence within the meaning of Mil.R.Evid. 405(a) (reputation and opinion testimony admissible to show character). *Cf.* Mil.R.Evid. 405(b)

(specific instances of person's conduct may be admissible to show character where character is essential element of an offense or defense). Accordingly, to the extent that appellant's argument relies on *United States v. Brown, supra*, we do not consider it persuasive.

Nevertheless, appellant's claim that he was improperly denied the opportunity to present evidence can be assessed in light of the reason proffered for its admission at trial. The record shows that trial defense counsel wanted to introduce the above-noted evidence for a reason other than proving appellant's character, *i.e.*, to undermine the prosecution's circumstantial case of criminal intent. *See United States v. Banks*, 36 MJ 150, 166 (CMA 1992); *see generally United States v. Mann*, 26 MJ 1, 4 (CMA 1988) (evidence of acts admissible to show state of mind).

■ Mil.R.Evid. 404(b) states:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of* motive, opportunity, *intent*, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, that upon request by the accused, the prosecution shall provide reasonable notice in advance of trial, or during trial if the military judge excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

(Emphasis added.) This Court has generally held that rebuttal-type evidence of intent is an "other purpose" within the meaning of this rule. *See United States v. Walker*, 42 MJ 67, 72 (1995); *see also United States v. Walsh*, 928 F.2d 7 (1st Cir.1991)(government offered evidence to rebut defense evidence of mistake). Accordingly, we must initially decide whether the proffered evidence was relevant to rebut the prosecution's circumstantial evidence that appellant intentionally killed his wife. *See United States v. Banks, supra* (general meaning of rebuttal evidence); Mil.R.Evid. 401 and 402.

Turning to this question, we note that in appellant's case, the prosecution was required to show that he killed his wife with premeditation or at least with a specific intent to kill or commit great bodily harm. Art. 118(1) and (2). It attempted to do so by proving a course of conduct engaged in by appellant prior to his wife's death that circumstantially proved his deteriorating marriage and growing dislike for his wife. *See United States v. Elmore*, 33 MJ 387, 389 (CMA 1991); *see generally* 2 Wigmore, *Evidence* § 242 at 44 (Chadbourn rev.1979). The prosecution planned to argue to the members that appellant had this same hostile state of mind towards his wife when he killed her and, thus, that it could be inferred he premeditated or specifically intended to kill her. *See United States v. Cox*, 18 MJ 72 (CMA 1984); *United States v. Colon-Angueira*, 16 MJ 20, 25 (CMA 1983).

The stated purpose of the defense evidence concerning appellant's life-saving effort was to undermine the factual basis supporting the inference that appellant had a hostile state of mind toward his wife prior to her death. *See* Mil.R.Evid. 404(b); *see also United States v. Walker, supra*. There can be no doubt that appellant had the right to counter the prosecution's proof of the intent element of this offense. *Banks*, 36 MJ at 166; *see* RCM 913(c)(1)(B), Manual, *supra*. Moreover, we agree with the military judge's initial ruling that this life-saving evidence was relevant to show a state of mind on the part of appellant *inconsistent* with a specific intent to kill his wife. *See generally United States v. Mann, supra; cf. United States v. Hill*, 40 F.3d 164, 168–69 (7th Cir.1994). Finally, in view of the continuous nature of the conduct the Government relied on to prove premeditation and intent, conduct which covered some 3–4 months before the victim's death, we are concerned with the military judge's later suggestion that appellant's life-saving effort was too remote in time to be relevant. *See United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir.1996)(conduct occurring 2 years from when charges brought not too remote*); United States v. Baker*, 82 F.3d 273, 276 (8th Cir.1996)(a decade not too remote if rele-

vance great); *cf. Hill, supra* at 169 (5 months after crime too remote).

■ Nevertheless, the military judge did not actually exclude the evidence of appellant's life-saving effort on the basis of relevance or remoteness. To the contrary, he *tentatively* or preliminarily ruled that this defense evidence might confuse the members or distract them from the real issue in this case, *i.e.,* appellant's intent on October 8, 1993. *See* Mil.R.Evid 403. He had earlier been informed that the prosecution had evidence that appellant goaded his wife into attempting suicide and then saved her life only because he felt guilty about it. Still, the judge left open the possibility that this evidence might be admitted at appellant's court-martial. The judge further ruled that the prosecution would be allowed to introduce its evidence that appellant had another motive or intent in saving his wife's life in July of 1993. *See generally* Mil.R.Evid. 104 (military judge's power to determine admissibility of evidence at court-martial).

In this context, the precise evidentiary question before us is whether the military judge erred in advising the defense that he would allow the later admission of prosecution evidence rebutting the defense evidence. *See Manos,* 848 F.2d at 1430. Clearly, the prosecution had the right under military rules of procedure to introduce relevant rebuttal evidence. *See* RCM 913(c)1(C). Also, the record establishes the unquestionable relevance of the proffered prosecution evidence to show appellant's intent or state of mind when he earlier saved his wife's life. Mil.R.Evid. 401 and 402; *see United States v. Banks, supra; cf. United States v. Bins,* 43 MJ 79, 85–86 (1995). In addition, the record shows that defense counsel's initial arguments for exclusion of this government rebuttal evidence under Mil.R.Evid. 401, 402, and 403 were not substantial. He argued only that the prosecution evidence did not rationally show appellant's guilty state of mind or that it included evidence of physical abuse previously excluded by the judge.

More particularly, the proffered prosecution rebuttal evidence showed appellant's active role in causing his wife to attempt to commit suicide in July of 1993. Such evidence tended to disprove the defense's contention that appellant's motivation for his life-saving act was good will towards his wife. *See generally* 1A Wigmore, *Evidence* § 58.2 at 1228 (Tillers rev.1983); Mil.R.Evid. 104. It logically suggested that this act was actually self-motivated, *i.e.,* intended to protect appellant or assuage his guilty conscience. *If the defense chose to make appellant's life-saving effort an issue in this case,* the prosecution was entitled to introduce rationally related evidence necessary to present an accurate or complete picture of this incident to the members. *See United States v. Frazier,* 33 MJ 260, 263 (CMA 1991).

■ Finally, turning to appellant's constitutional argument, we note that he has not attacked the constitutionality of Mil.R.Evid. 403 or the discretion which it gives a military judge to ensure a fair trial. *See Garcia,* 44 MJ at 31; *cf. United States v. True,* 41 MJ 424, 427 (1995); *United States v. Stark,* 24 MJ 381, 385 (CMA 1987). Even if he had, we hold that the Constitution does not provide him a unilateral right to present defense evidence at his court-martial without also allowing the prosecution to present legally admissible evidence rebutting it. *See generally Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991); *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Moreover, it was appellant's decision to not further challenge the evidentiary conditions placed upon him by the military judge, and to not introduce his evidence while objecting to those conditions. *See United States v. Ruth, supra; see also Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Lastly, the military judge also excluded substantially unfavorable prosecution evidence concerning the life-saving incident, and admitted other defense evidence which the defense used to challenge the Government's case on criminal intent, *i.e.,* evidence that the victim was pregnant with appellant's child. In these circumstances, we perceive no substantial infringement of appellant's right to present his defense or other constitutional unfairness in

the trial judge's rulings. *See Garcia, supra* at 31–32 (in context of entire case, excluded evidence did not have great value).

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.