**Patricia Ann (Hampton) BAIER, Plaintiff and Appellee,**

v.

**James William HAMPTON, Defendant and Appellant.**

**Cr. No. 880106.**

Supreme Court of North Dakota.

May 17, 1989.

Charles C. Wilder (argued), Asst. State's Atty., Williston, for plaintiff and appellee.

Bjella, Neff, Rathert, Wahl & Eiken, P.C., Williston, for defendant and appellant; argued by William E. McKechnie.

MESCHKE, Justice.

James Hampton appealed from a jury conviction of criminal contempt. Because the trial judge should have recused himself, we reverse and remand for a new trial.

The claimed misconduct occurred during four court hearings in 1986 and 1987 to determine Hampton's ability to pay child support ordered by a prior divorce judgment. During questioning on his finances, Hampton disclosed that he was receiving military retirement benefits of $466 monthly. However, he did not disclose that he was also receiving military educational benefits of $606 monthly.

Finally, at a hearing on March 2, 1987, the trial court became aware of Hampton's receipt of educational benefits. This hearing was continued on March 9 and March 12.[1] After the March 12 hearing, the trial court held Hampton in contempt of court for failing to pay child support as ordered

---

1. For reference, the hearings held prior to March 1987 are the child support hearings; the hearings of March 2, 9, and 12, 1987 are the contempt hearings.

and for giving "deceitful and evasive" answers about his income.

Hampton appealed and we partially reversed. We held that the portion of the order, finding Hampton in contempt for his "deceitful and evasive" testimony and imposing an unconditional jail sentence, was criminal contempt which required compliance with Rule 42(b), N.D.R.Crim.P.[2] *Baier v. Hampton*, 417 N.W.2d 801 (N.D.1987).

On remand, the State began a criminal contempt action against Hampton. The case was assigned to Judge Wilson, who had also been the judge in the child support hearings and in the contempt hearings. Hampton demanded a change of judge. Judge Wilson declined to recuse himself, and the presiding judge of the district denied Hampton's motion. Judge Wilson presided at the jury trial.

Numerous evidentiary disputes arose before and during trial. The trial court denied Hampton's request to depose the State's Attorney and an Assistant State's Attorney (who had questioned Hampton during the child support hearings), and Hampton was not allowed to call them as witnesses. Hampton also unsuccessfully attempted to call Judge Wilson as a witness.

Most of the State's evidence was reading selected passages from the transcripts of the child support hearings. These selected portions of the transcripts were also entered as exhibits. The judge allowed Hampton to introduce certain other portions of the transcripts of the child support hearings, but denied his attempts to introduce parts of the transcripts from the March contempt hearings. In particular, Hampton was denied use of Judge Wilson's statement that Hampton was

"[v]ery often not responsive to the question, and that's partly our fault, perhaps. It's partly the fault of the attorney and partly the fault of the—the Court, and I learned something by it. . . ."

The jury found Hampton guilty of criminal contempt. Hampton appealed again. We hold that Judge Wilson should have recused himself.

In criminal contempt cases, Rule 42(b), N.D.R.Crim.P., disqualifies the trial judge if the contempt charged "involves disrespect to or criticism of" that judge. The United States Supreme Court has recognized that, under the identical language in Rule 42(b), F.R.Crim.P., a charge of giving false and evasive testimony does not trigger the automatic disqualification of the rule. *See Nilva v. United States*, 352 U.S. 385, 395–396, 77 S.Ct. 431, 437–438, 1 L.Ed. 2d 415, 423 (1957). This observation does not end the inquiry, however; it only begins it. Rule 42 is not a blanket license for a trial judge to try all other kinds of contempt. Additional rules regulate judicial conduct.

The Explanatory Note to Rule 42 specifically calls attention to and quotes the ABA Standards for Criminal Justice on the Function of the Trial Judge. 1988 North Dakota Court Rules (West Publishing Co.), p. 330. The applicable Standard, now numbered 6–4.5, states:

"The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to another judge if the original judge's conduct was so integrated with the contempt so as to have contributed to it or was otherwise involved, or if the original

---

2. Rule 42(b) says:
   "A criminal contempt, except as provided in Subdivision (a) of this Rule, shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the prosecuting attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury as provided in Rule 23(a). He is entitled to release from custody as provided in Rule 46. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt, the court shall enter an order fixing the punishment."

judge's objectivity can reasonably be questioned."

Thus, if a trial judge's conduct "contributed to ... or was otherwise involved" in the circumstances of the contempt, the trial judge should step aside voluntarily.

The Rules of Judicial Conduct direct a judge's decisions on disqualification. Rule 3(C)(1)(a) states:

> "C. *Disqualification.*
>
> "(1) A judge's disqualification is appropriate when the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
>> "(a) a judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...."

Rule 3(C)(1)(d)(iv) calls for disqualification when the judge

> "is to the judge's knowledge likely to be a material witness in the proceeding...."

The Rules of Judicial Conduct thus disqualify a judge who has personal knowledge of disputed evidentiary facts.

We recently pointed out that the disqualification provisions of Rule 3(C) are mandatory, not mere guidelines. *Matter of Estate of Risovi*, 429 N.W.2d 404, 407 n. 3 (N.D.1988). In *Risovi*, we ruled that orders entered by a judge who should have recused himself under Rule 3(C) were void. A judge must respect rules affecting his eligibility for a particular trial.

Hampton cited many occurrences which, he asserted, demonstrated that Judge Wilson was biased and had pre-judged the case. We need not discuss each instance highlighted by Hampton. The record contains various comments by the judge which do call his impartiality into question.

To illustrate, on several occasions during the trial, the judge stated his belief that Hampton had lied. The judge remarked: "I feel that the man lied to me ..."; "The

Supreme Court mentioned in—in the opinion that he was deceitful ..."; "we all know he lied to the Court ... The Supreme Court even acknowledged it in their opinion. They said so right out in so many words...." [3] Although these remarks were made outside the presence of the jury, other remarks were made with the jury present. At one point, in ruling on the State's objection that Hampton was giving a narrative answer, the court stated: "Let him ramble if he wants to, but you should be responsive to the question.... That's been part of the trouble all the way along." This remark may well have made an adverse impact on some jurors' minds about Hampton's testimony. In sum, the remarks reflect that Judge Wilson's impartiality could reasonably be questioned.

We are also troubled by the trial court's handling of Hampton's attempt to call the judge to testify or, alternatively, to introduce evidence of the judge's earlier statements which Hampton claimed were exculpatory. Generally, the trial court has wide discretion in admitting or excluding evidence and in permitting or limiting testimony. *E.g.*, Explanatory Notes, Rules 401 and 403, N.D.R.Ev.; *Schmidt v. Schmidt*, 432 N.W.2d 860, 862 (N.D.1988); *State v. Erdman*, 422 N.W.2d 808, 812 (N.D.1988). However, we are not satisfied that this judge calmly weighed relevant factors and evenhandedly exercised his discretion in his rulings that he would not testify nor allow his prior statements as evidence.

On the first day of trial, an illustrative colloquy occurred in chambers:

> [THE COURT:] "And I want to tell you now that the Court isn't going to testify. You mentioned that in your—
>
>> "MR. McKECHNIE: Yeah, I have—
>
> "THE COURT: —your statement.
>
>> "MR. McKECHNIE: I have another brief on that issue, too.

---

**3.** We have reviewed our opinion in the prior appeal. We find no hint, let alone a direct reference, which suggests any conclusion on Hampton's truthfulness. Although we affirmed the trial court's order of civil contempt for failure to pay child support, we specifically reversed that part of the trial court's order holding Hampton in contempt for "deceitful and evasive" answers.

"THE COURT: Well, I don't care how many briefs you give me because I won't testify."

During another conference in chambers, Hampton's counsel sought permission to introduce the judge's statement from the March 12 hearing, which arguably suggested that Hampton's unresponsiveness was partly the fault of the attorneys and of the judge. Judge Wilson reacted:

"Well, that's, again, my statement, and that shouldn't be—that would be prejudicial one way or the other. That I won't tolerate. That's absolutely—that's—that's my testimony, and I said I'm not going to testify."

These declarations also reflect that Judge Wilson's impartiality could reasonably be questioned.

Myriad procedural difficulties emerge when the testimony of a sitting judge is possibly relevant. Judicial disqualification dispels those difficulties. In this way, the Supreme Court of Georgia dealt with a similar situation in *In re Crane*, 253 Ga. 667, 324 S.E.2d 443 (1985). Crane had made a series of telephone calls to the judge's secretary and to the deputy clerk of court, using vulgar and insulting language, because the judge would not speak to him about a default judgment which had been entered against him. The Georgia Supreme Court reasoned from the same ABA Standard and from its comparable Code of Judicial Conduct. The Georgia Supreme Court held that the judge's impartiality "might reasonably be questioned by reason of his knowledge that he was likely to be a material witness in the proceeding," and that "he was so involved in the controversy and integrated with the contempt so as to have contributed to it or was otherwise involved so that his objectivity could reasonably be questioned." *Crane, supra*, 324 S.E.2d at 445. The Georgia Supreme Court concluded that the trial judge should have disqualified himself, and that his failure to do so required reversal of the contempt conviction. *See also State ex rel. Moser v. District Court*, 116 Mont. 305, 151 P.2d 1002, 1007–1008 (1944); *State v. Weiner*, 37 Ohio St.2d 11, 305 N.E.2d 794 (1974) (Celebrezze, J., dissenting). Prece-

dent supports disqualification to do away with the potential of problems when a judge's impartiality may reasonably be questioned.

Our primary concern in this kind of case is the preservation of public respect and confidence in the integrity of the judicial system. That respect and confidence can only be maintained if justice satisfies the appearance of justice. *See Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954); *Matter of Estate of Risovi, supra*, 429 N.W.2d at 407. This importance was well expressed by Mr. Justice Black for the United States Supreme Court in *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955):

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' *Tumey v. State of Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 [ (1927) ]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13 [99 L.Ed. 11] [ (1954) ]."

Even without intentional bias, disqualification can be essential to satisfy the appearance of justice.

Judge Wilson's conduct did not show any intentional unethical behavior. We believe that Judge Wilson honestly attempted to fairly try Hampton on the charge of contempt. However, from our review of the record as a whole, we are unable to conclude that the judge held " 'the balance nice, clear, and true between the State and the accused.' " *Murchison, supra*, 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. at 946. This is particularly true in light of Judge Wilson's response when called upon to rule on use of his own statements and testimony. In this case, the appearance of justice was not satisfied.

Judge Wilson personally observed the alleged contumacious conduct. From his participation in the prior hearings, he had plainly formed an opinion about Hampton's guilt. His participation in the child support hearings and his subsequent statement about contributing faults suggest that he was "otherwise involved" in the contempt. It is not surprising that Judge Wilson's testimony was sought by Hampton. Judge Wilson's impartiality and objectivity could reasonably be questioned. The applicable Standard for Criminal Justice and the Rules of Judicial Conduct call for a judge in these circumstances to disqualify himself. Judge Wilson should have done so.

Our conclusion, that the judge should have disqualified himself, makes it unnecessary to address the remaining issues raised by Hampton on appeal. We reverse and remand for a new jury trial by a different district judge.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, J., concurs in result.