STATE of North Dakota, Plaintiff
and Appellee,

v.

Norman Walter GONDERMAN,
Defendant and Appellant.

Cr. No. 940240.

Supreme Court of North Dakota.

March 16, 1995.

**12**

Mark Boening, Asst. State's Atty., Fargo, for plaintiff and appellee.

Alisha Ankers, Johnson Law Office, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

Norman Walter Gonderman appealed from a judgment of conviction based upon jury verdicts finding him guilty of four counts of gross sexual imposition. We affirm.

Gonderman was charged with engaging in sexual acts and having sexual contact with two minor children in violation of N.D.C.C. §§ 12.1–20–03(1)(d) and 12.1–20–03(2)(a). Gonderman applied for indigent defense ser-

vices and was represented at trial by court-appointed counsel. A jury found Gonderman guilty on all four counts, and he appealed.

On appeal, Gonderman asserts that the trial court erred in denying his request for additional public funds for a "nocturnal penile study" which, he contends, was essential to his defense. Throughout his prosecution, Gonderman maintained that he was impotent and had been incapable of having an erection for at least six years. The trial court initially granted Gonderman's request for up to $500 for a medical exam by an urologist. Gonderman thereafter requested $3,000 for a "nocturnal penile study" to support his contention that he was impotent and could not maintain an erection.[1] The court denied Gonderman's request for additional public funds for that study, because Gonderman's "ability or inability to maintain an erection is not an element of the defense of these charges."

■ The authorization of public funds for expert assistance for an indigent defendant is a matter which lies within the discretion of the trial court and is reviewed under the abuse-of-discretion standard. *United States v. St. John,* 851 F.2d 1096 (8th Cir.1988); *State v. Lesiak,* 234 Neb. 163, 449 N.W.2d 550 (1989); *State v. Walters,* 426 N.W.2d 136 (Iowa 1988); *State v. Red Star,* 467 N.W.2d 769 (S.D.1991); *State v. Volker,* 477 N.W.2d 909 (Minn.App.1991); *State v. Owens,* 248 Kan. 273, 807 P.2d 101 (1991).

At trial, Gonderman presented testimony that the results of a less expensive, self-administered "snap-gauge test" supported his contention that he was impotent.[2] Gonderman presented testimony that he attempted two snap-gauge tests, and after fitting the first snap-gauge device, he urinated and broke one of the bands. Gonderman introduced evidence that he obtained a second snap-gauge device with specific instructions not to urinate during the test, and the bands did not break during that test.

---

1. According to Gonderman's request for additional public funds, a "nocturnal penile study" is done under medical supervision, and "[d]uring the study, basically the penis is attached to an electrode which determines whether there is any type of erection."

2. Gonderman's appellate brief describes the "snap-gauge test" as a self-administered test in which a snap-gauge "is securely placed around the penis of a man, and if, during the course of rapid-eye sleep, he experiences an erection, the bands securing the snap-gauge will break."

■ Gonderman asserts that the jury could have misconstrued his explanation about the first snap-gauge test and argues that he was forced to proceed at trial without the benefit of a "nocturnal penile study." He argues that

"[h]is compelling reason for requesting such testing is to prove his failure to have an erection, which is a key element of sexual gratification. While sexual gratification, or an erection, for that matter, is not necessarily an element of the crime of gross sexual imposition, it can be inferred from the act itself that the accused conducts him/herself in such a criminal manner for the purpose of experiencing pleasure. The most obvious sign of a male's sexual pleasure is an erection.

"Gonderman has not had an erection for at least 6 years. He needed to prove that to the jury in order to prove that he was not physically capable of experiencing any sexual pleasure from the acts that he was accused of. If he could not experience sexual pleasure from such abhorrent acts, then why would he do them?"

■ When a State brings criminal charges against an indigent defendant, it must take steps to ensure that the accused has a meaningful chance to present a defense. *See, e.g., Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Although a State need not provide an indigent defendant with all the tools that a wealthier counterpart may buy, it must provide an indigent defendant with the "basic tools of an adequate defense." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400, 403 (1971). *See State v. Valgren,* 411 N.W.2d 390 (N.D. 1987) [where indigent defendant had adequate alternatives to discovery depositions of police officers and eye witnesses to arrest, defendant was not denied access to raw materials integral to an effective defense].

■ In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), a capital case, the United States Supreme Court held that when an indigent defendant makes a preliminary showing that mental capacity at the time of an alleged offense is likely to be a significant factor at trial, that defendant has a federal due process right to have the State provide access to a psychiatrist's assistance on that issue. Under *Ake, supra,* 470 U.S. at 77, 105 S.Ct. at 1093, indigent defendants do not have carte blanche to obtain expert assistance; instead, they are entitled to expert assistance necessary to afford " 'an adequate opportunity to present their claims fairly within the adversary system.' " *See State v. Norman,* 507 N.W.2d 522 (N.D.1993) [indigent defendant not entitled to a second psychiatric evaluation at public expense].

The underlying premise of *Ake, supra,* 470 U.S. at 74, 105 S.Ct. at 1091–92, is that the issue requiring expert assistance "is likely to be a significant factor at trial." The expert assistance must be necessary or relevant to issues involved in the trial so that the denial of that assistance would result in an unfair trial. *See St. John, supra; Little v. Armontrout,* 835 F.2d 1240 (8th Cir.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *Lesiak, supra; Walters, supra; Volker, supra; Owens, supra.*

Here, Gonderman requested additional public funding for expert assistance to prove that he was impotent and incapable of having an erection. Gonderman was charged under N.D.C.C. § 12.1–20–03(1)(d) with engaging in a "sexual act" with two victims less than fifteen years old, and under N.D.C.C. § 12.1–20–03(2)(a) with having "sexual contact" with two victims less than fifteen years old. Sections 12.1–20–02(3) and (4), N.D.C.C., define "sexual act" and "sexual contact":

"3. 'Sexual act' means sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, or the mouth and the vulva; or the use of an object which comes in contact with the victim's anus, vulva, or penis. For the purposes of this subsection, sexual contact between the penis and the vulva, or between the penis and the anus or an object and the anus, vulva, or penis of the victim, occurs upon penetration, however slight. Emission is not required.

"4. 'Sexual contact' means any touching of the sexual or other intimate parts

of the person for the purpose of arousing or satisfying sexual or aggressive desires."

Under those definitions, whether or not a defendant is impotent, or can maintain an erection, is not an element of the offense of gross sexual imposition, nor is it a defense to the charge. *State v. Drader*, 374 N.W.2d 601 (N.D.1985) [gross sexual imposition statute does not require erection]. The issue of impotency and Gonderman's ability to maintain an erection was not a significant factor at his criminal prosecution for gross sexual imposition. Instead, the trial hinged on the credibility of the witnesses. We are not persuaded that the trial court's denial of additional public funds for a "nocturnal penile study" denied Gonderman a fair trial. We conclude that the trial court did not abuse its discretion in denying Gonderman's request for additional public funds for that study.

■ Gonderman argues that the trial court erred in refusing to allow him to offer testimony of his religious beliefs to prove that those beliefs rendered him incapable of committing the crimes.

During direct examination of Gonderman's wife, the following colloquy occurred:

"Q [Ms. Johnson] Does that church have very traditional beliefs?

"A [Mrs. Gonderman] Yes.

"MR. BOENING: Objection, relevance.

"THE COURT: Sustained.

"MS. JOHNSON: I would like to make an offer of proof on this.

"THE COURT: You may step out into the hall, please.

"(Continued in open court, out of the presence of the jury, the defendant being present with counsel:)

"MS. JOHNSON: Your Honor, for my offer of proof, if you would have allowed me to question Mrs. Gonderman on this line of questioning, you would find—or the evidence would prove to the jury that the church that these folks belong to is a very traditional one.

"They have attended it for 20 years. They do not believe in premarital sex. They do not believe in even couples who are unmarried coming to their church.

"They have some very, very staunch beliefs, which would certainly go against any of the behaviors that the State is putting forth. I believe that this type of basic structure of this church that these folks are involved with is very, very important to this case.

"THE COURT: Objection is sustained."

During direct examination of Gonderman's pastor, the following colloquy occurred:

"Q [Ms. Johnson] Is your church, Pastor, a very traditional one?

"MR. BOENING: Objection, relevance.

"THE COURT: Ladies and gentlemen, if you would step out in the hall for just a moment.

"(Continued in open court, out of the presence of the jury, the defendant being present with counsel:)

"THE COURT: The purpose of the question, counsel?

"MS. JOHNSON: Your Honor, again, under my offer of proof, one, it would go I think to the character of this witness, that it's a very traditional church. He is the pastor. The other is to show what the beliefs are. Mr. Gonderman's been a member of this church for 20 years.

"I would also like to go into that realm. Also, I believe that Mr. Gonderman has shared confidences with this pastor as well.

"THE COURT: If I understand, your purpose is to show evidence that—of religious beliefs and opinions that would—for the purpose of showing that by your—the nature of the religion and your client's nature, that that would be making him incapable of performing these acts? Is that the purpose?

"MS. JOHNSON: Yes.

"THE COURT: Is there an objection?

"MR. BOENING: Yes, Your Honor. I don't know how the beliefs of a group that person belongs to—

"THE COURT: No. 1, it lacks—I am going to rule. No. 1, it lacks foundation. We don't even know that Mr. Gonderman has even relied on this.

"And, No. 2, interestingly enough, it is an attempt to reverse, I guess, Rule 610, which is—kind of goes the other way.

"The objection is sustained.

"You may bring the jury back.

"MS. JOHNSON; Your Honor, it goes to Mr. Boening's question to the jury.

"THE COURT: Leave the jury out for just a moment.

"MS. JOHNSON: One, I would make the same offer of proof that I made with Mrs. Gonderman, as I do feel this is particularly important in this case.

"How do you prove you didn't abuse these two children? Maybe someone else did. But how do you prove you didn't?

"And the other matter is that Mr. Boening, to the jury—one of his questions on voir dire is, Does anyone here believe that having sexual relationships with a child should be legal or there shouldn't be laws against it or those kinds of things, so we have actually ferreted that out of the jury.

"So that issue has been raised to this jury—although, only on voir dire—that there are people who believe that having sexual relationships with children is okay.

"THE COURT: You may ask that question, if you so wish, but that's not the question that's before him.

"MS. JOHNSON: Mine was a more general one, Your Honor.

"THE COURT: The objection is sustained as to—I'm not going to allow—I guess the—a witness to testify as to religion or beliefs that would somehow indicate the incapacity or to perform such an act."

On appeal, Gonderman does not assert that the testimony was offered to bolster his credibility. Instead, he argues that it was offered to prove that his religious beliefs prohibited him from committing these crimes because they were forbidden by his church. He asserts that the proffered testimony shows that he believes it is sinful to have sexual contact with children and to have extramarital sexual relationships. He contends that the testimony was offered to show that his behavior was consistent with his religious beliefs, and, therefore, he was not morally capable of committing these crimes.

■ Rule 610, N.D.R.Evid., provides:

"Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced."

Rule 610, N.D.R.Evid., prohibits testimony about a witness's religious beliefs to enhance or impair the witness's credibility.[3] *See United States v. Teicher*, 987 F.2d 112 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *United States v. Sampol*, 636 F.2d 621 (D.C.Ct.App.1980); *Government of Virgin Islands v. Petersen*, 553 F.2d 324 (3rd Cir.1977); *State v. Thomas*, 130 Ariz. 432, 636 P.2d 1214 (1981); *State v. Marvin*, 124 Ariz. 555, 606 P.2d 406 (1980); *Redman v. Watch Tower Bible and Tract Society of Pennsylvania*, 69 Ohio St.3d 98, 630 N.E.2d 676 (1994). *See generally* Annot., Propriety and Prejudicial Effect of Questions or Comments as to Witness' Religious Beliefs or Standards Designed to Enhance Credibility, 27 A.L.R.4th 1167 (1984). To the extent that the testimony was offered to enhance a witness's credibility, it was inadmissible under N.D.R.Evid. 610.

However, the explanatory note to N.D.R.Evid. 610 explains that it "prohibits admission of evidence of religious beliefs only if offered to affect credibility. Such evidence may be offered for other purposes, such as showing bias." *See Teicher, supra; United States v. Hoffman*, 806 F.2d 703 (7th Cir. 1986), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1627, 95 L.Ed.2d 201 (1987); *United States v. Brown*, 41 M.J. 1 (1994); *State v. Reilly*, 71 N.C.App. 1, 321 S.E.2d 564 (1984), *aff'd on other issues without addressing evidence issue*, 313 N.C. 499, 329 S.E.2d 381 (1985). Here, the proffered testimony about Gonderman's religious beliefs was to show that his character rendered him incapable of committing these crimes.

---

**3.** Where our procedural rules follow the corresponding federal rule, we may rely upon persuasive federal decisions construing the federal rules to interpret our rule. *E.g., State v. Manke*, 328 N.W.2d 799 (N.D.1982).

Rules 404(a)(1) and 405, N.D.R.Evid., outline the procedure for proving character. Rule 404(a)(1), N.D.R.Evid., generally prohibits the use of character evidence to prove action in conformity therewith, except that an accused may offer evidence of a pertinent trait of character. Rule 405, N.D.R.Evid., regulates the methods for proving character:

"(a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

"(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct."

■ Under N.D.R.Evid. 405, a witness's observations of a defendant over a length of time is the recognized foundation for both opinion and reputation testimony. *See Brown, supra; Petersen, supra; Rogers v. United States*, 566 A.2d 69 (D.C.Ct.App. 1989). The appropriate means to elicit testimony under that rule is, after appropriate foundation, to inquire directly as to the witness's opinion concerning the relevant character trait, or the reputation of the accused. *State v. McIntyre*, 488 N.W.2d 612 (N.D. 1992); *Brown, supra; Petersen, supra; Rogers, supra*. *See generally* 22 Wright & Graham, Federal Practice and Procedure §§ 5264 et seq. (1978).

Here, Gonderman's *offer of proof indicates* that the method prescribed by N.D.R.Evid. 405 for proving character was not followed and that the purpose of the evidence was contrary to N.D.R.Evid. 610. The trial court's ruling did not limit or preclude Gonderman from offering testimony about Gonderman's reputation, or testimony in the form of an opinion under N.D.R.Evid. 405. Under these circumstances, we hold that the trial court did not abuse its discretion in refusing to admit Gonderman's proffered testimony.

■ Gonderman asserts that the evidence was insufficient to support the jury verdicts. We disagree.

■ When reviewing sufficiency of the evidence to support a criminal conviction, we sustain a guilty verdict unless, after viewing the evidence in the light most favorable to the prosecution and giving it the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Schill*, 406 N.W.2d 660 (N.D.1987). We do not weigh conflicting evidence, nor do we judge the credibility of the witnesses; instead, we look only to the evidence and inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant a conviction. *Id.*

In this case, it would serve no useful purpose to detail the evidence against Gonderman. It is sufficient for our review to say that the evidence presented at trial, especially the testimony of the two minor victims, reveals substantial evidence which, if believed, supports the jury's guilty verdicts. *See Schill, supra* [child's uncorroborated testimony is sufficient to support conviction of gross sexual imposition]. The State also introduced testimony from a physician who examined the children and from a witness who testified that he observed some of the sexual acts and sexual contact. Although Gonderman testified that he did not commit the crimes, it is not our function to judge the credibility of these witnesses. Viewing the evidence in the light most favorable to the jury verdicts, we conclude there was substantial evidence to support the convictions.

We affirm the judgment.

SANDSTROM, NEUMANN and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of LEVINE, J., disqualified.