2004 ND 127
**CITY OF FARGO, Plaintiff and Appellee**

v.

**David Alan HABIGER, Defendant and Appellant.**

**No. 20030248.**

Supreme Court of North Dakota.

June 30, 2004.

Stephen R. Dawson, City Prosecutor, Fargo, ND, for plaintiff and appellee.

Cash Hennessy Aaland, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] David Habiger appeals from a judgment based upon a jury verdict finding him guilty of disorderly conduct. We affirm.

## I.

[¶ 2] On May 31, 2002, at MeritCare Hospital in Fargo, North Dakota, an altercation occurred between Habiger and security personnel. Fargo police arrived and arrested Habiger for allegedly causing a disturbance. The City of Fargo charged Habiger with disorderly conduct, and Habiger requested a jury trial in district court.

[¶ 3] Prior to his first appearance in district court, on July 15, 2002, Habiger wrote a letter to the district court. Habiger's ex parte letters to the district court continued throughout the course of litigation.

[¶ 4] On July 17, 2002, Habiger was arraigned. At the time of his arraignment, Habiger entered into a lengthy monologue before the court regarding the cause of his brother's death and Merit-Care's alleged involvement and subsequent cover up. The presiding judge at the initial stages of the proceedings, Judge McGuire, allowed Habiger to speak for several minutes before he attempted to assign a public defender, which Habiger declined to accept. Habiger stated he did not want to be "bound" by a public defender, but that he may choose to hire an attorney in the future.

[¶ 5] On September 6, 2002, Judge McGuire sent Habiger a letter requesting him to limit his ex parte correspondence to the court to relevant matters. Judge McGuire also admonished Habiger to seek the advice of an attorney. On September 18, 2002, the case was re-assigned to Judge Norman Backes.

[¶ 6] A jury trial was held on May 20, 2003. Habiger was convicted of disorderly conduct and sentenced to a 30–day suspended sentence, a fine, and community service. Habiger appeals to this Court.

## II.

[¶ 7] The first issue presented by Habiger is "whether the Appellant's conviction should be reversed as the trial judge erred in failing to disqualify himself." This issue was first presented to the district court in an ex parte communication initiated by Habiger. Habiger alleged Judge McGuire was "bias" and "in the back pocket" and "afraid of the corrupt godless power of [MeritCare]." Initially, Judge McGuire denied Habiger's demands for a change of judge because Habiger failed to comply with the appropriate rules of procedure.

[¶ 8] On September 6, 2002, Judge McGuire wrote to Habiger to inform him his communication to the district court was not appropriate and to advise him to contact an attorney. On September 18, 2002, Judge McGuire removed himself from the case and Judge Backes was assigned. On September 25, 2002, Habiger wrote to the district court demanding Judge Backes remove himself from the case because he was "bias," prejudice," and "a tyrant." Habiger filed various motions and communications with the district court demanding Judge Backes remove himself from the case. Judge Backes continued as presiding judge, and the case proceeded to trial on May 20, 2003.

[¶ 9] At trial, Habiger contends Judge Backes demonstrated his bias and preju-

dice when, after indulging Habiger in a lengthy soliloquy, Judge Backes threatened to hold Habiger in contempt because he had backed up the misdemeanor docket and was wasting county resources. Judge Backes also told Habiger he knew Habiger's brother and "got along a lot better with your brother."

[¶ 10] The disqualification of a judge is governed by N.D.Code Jud. Conduct Canon 3. The applicable rule provides:

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceedings.

N.D.Code Jud. Conduct Canon 3(E)(1)(a).

[¶ 11] This Court has previously held a judge should disqualify him or herself when the defendant is before the judge on a contempt charge which involved " 'disrespect or criticism of' that judge." *Baier v. Hampton,* 440 N.W.2d 712, 713 (N.D.1989). Habiger relies on *Baier* to argue Judge Backes should have disqualified himself in the proceeding; however, the rule from *Baier* is not applicable in this case.

[¶ 12] In *Baier,* the judge presiding over trial on a contempt charge had personal knowledge of the facts of the case and commented in the presence of the jury as to the judge's opinion of the defendant and his propensity for veracity. *Baier,* at 714. In this case, the judge did not have personal knowledge of the facts, nor was there any risk Judge Backes would have been called as a witness in the proceeding, as was the case in *Baier. Id.*

[¶ 13] Judge Backes was not under any obligation to withdraw as judge in Habiger's disorderly conduct case because the record does not reflect Judge Backes had personal knowledge of the facts, nor did he demonstrate bias or prejudice sufficient to raise concerns about his impartiality. Judge Backes was also not under a duty to withdraw because Habiger failed to properly demand a change of judge under N.D.C.C. § 29–15–21, which governs the procedure for the parties' right to request a change of judge.

[¶ 14] Under N.D.C.C. § 29–15–21, a party may request a change of judge if the party follows proper procedure. Although Habiger did not follow proper procedure to demand a change of judge, Judge McGuire voluntarily recused himself and Judge Backes was assigned. Habiger was not entitled to a change of judge based on his failure to follow procedure.

III.

[¶ 15] The next issue raised by Habiger is whether Habiger's "conviction should be reversed as [he] was not afforded his rights to counsel as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 12 of the North Dakota Constitution." Habiger argues he was not adequately advised of the dangers and disadvantages of self-representation. We disagree.

[¶ 16] This issue was recently addressed by the United States Supreme Court in *Iowa v. Tovar,* —— U.S. ——, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). The Supreme Court concluded a specific colloquy between the court and the defendant was not necessary, but each state was free to "adopt by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful." *Id.* at 1390.

[¶ 17] "Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a

'knowing, intelligent act done with sufficient awareness of the relevant circumstances.'" *Tovar*, at 1383 (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). The United States Supreme Court has declined to prescribe a set formula for establishing when a defendant has knowingly and intelligently waived his right to counsel. *Tovar*, at 1390. The Court described an intelligent waiver of counsel as "when the defendant 'knows what he is doing and his choice is made with eyes open.'" *Tovar*, at 1387 (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

[¶ 18] A defendant has a right to counsel under the Sixth Amendment of the United States Constitution. *State v. DuPaul*, 527 N.W.2d 238, 240 (N.D.1995). The standard of review on an alleged denial of the constitutional right to counsel is de novo. *State v. Poitra*, 1998 ND 88, ¶ 7, 578 N.W.2d 121. "[T]he denial of the right to counsel at trial requires reversal of a defendant's conviction because prejudice is presumed." *Id.*

[¶ 19] In *State v. Dvorak*, 2000 ND 6, ¶ 11, 604 N.W.2d 445, this Court held the district court did not need to enter into a specific colloquy about the dangers of proceeding pro se. *Id.* The district court should make an on-the-record determination that the defendant unequivocally, knowingly, and intelligently waived the right to counsel. *Id.*

[¶ 20] Indigent defendants have the right to appointed counsel under N.D.R.Crim. P. 44(a), which provides:

Absent a knowing and intelligent waiver, every indigent defendant is entitled to have counsel appointed at public expense to represent the defendant at every stage of the proceedings from initial appearance before a magistrate through appeal in the courts of this state in all felony cases. Absent a knowing and intelligent waiver, every indigent defendant is entitled to have counsel appointed at public expense to represent the defendant at every stage of the proceedings from initial appearance before a magistrate through appeal in the courts of this state in all non-felony cases unless the magistrate has determined that sentence upon conviction will not include imprisonment. The court shall, appoint counsel to represent a defendant at the defendant's expense if the defendant is unable to secure the assistance of counsel and is not indigent.

[¶ 21] Habiger appeared before the district court on July 17, 2002, for arraignment. The district court attempted to appoint counsel for Habiger, but Habiger indicated he intended to proceed on his own. The following exchange occurred:

THE COURT: Okay. I'm going to appoint a public defender to represent you, David.

THE DEFENDANT: I don't want—I want to represent myself because, no offense, but with a public defender, my hands are tied.

THE COURT: Okay.

THE DEFENDANT: As an individual, I have a lot wider way of defending myself because it would be limited—

THE COURT: Okay, that's fine. And that's your right. You defend yourself. But how about having—

THE DEFENDANT: If I do decide, I might get a lawyer on my own, but I'm not sure about that.

THE COURT: Oh, okay.

THE DEFENDANT: I have to consider that.

THE COURT: Oh, okay. How about having a public defender to stand by?

THE DEFENDANT: I don't want to be—I don't want to be held accountable to pay for it.

THE COURT: Okay.

THE DEFENDANT: And I—no disrespect, but I consider what I make my own business and I'm not going to tell the court that.

THE COURT: Okay.

THE DEFENDANT: I consider what you make and I just—I'm one that believes in conservatism and independence and if I took—no disrespect, then I'd be playing the part of someone that's trying to take the State for a ride and I'm not going to do that.

THE COURT: Okay.

THE DEFENDANT: I'll tell you what, I may be emotional, I may be outspoken, but I live up to the words that I talk and I'm not a hypocrite. I think that's entirely important and I tell you what, as God as my witness, if I had a million dollars to put on it, this jury will not convict me.

THE COURT: Okay.

THE DEFENDANT: And I ask that I might—I might consider the possibility of having an attorney because I'm going to have the proper paperwork. I would have had the proper paperwork drawn up to dismiss the charges, but when I contacted the Court no one knew where it was at. This was like a cluster. You know, like I say, when it goes before the jury, all these facts, not being charged, thrown in jail, you know, when I just wanted the truth.

The thing is the public sentiment against these hospitals is turning.

THE COURT: Okay.

[¶ 22] Habiger engaged in other pretrial communication to the district court which took the form of several letters sent to the judge presiding in the case. After receiving several letters, Judge McGuire urged Habiger to seek the advice of counsel. Judge McGuire wrote:

> I am not allowed to advise you on the law or its procedures. I implore you to contact an attorney and find out exactly how to remove a Judge from your case and how to obtain the tape or a copy of the same or any other materials you wish to discover. You must understand that this charge will not go away and that the case will go to trial. You need to be prepared and so you need to understand the rules of procedure so that you can make proper preparation. It would appear that the only way you are going to be able to do that is to contact an attorney to at least obtain the minimum information on how to properly proceed to obtain the things you desire.

Neither Habiger nor Judge McGuire made further reference to appointment of counsel. Habiger bases his argument on comments made by Judge Backes at a post-trial hearing on a motion for a new trial. In response to Habiger's argument that he was not sufficiently advised, Backes responded, "I believe the Defendant has a right to self representation and I don't know a law that indicates that the Court has to indicate the dangers of such self-representation. Although I may have done so anyway."

[¶ 23] This Court has previously held, "[c]riminal defendants who proceed pro se must voluntarily, knowingly, and intelligently relinquish the benefits of counsel." *State v. Schneeweiss*, 2001 ND 120, ¶ 26, 630 N.W.2d 482 (citing *State v. Dvorak*, 2000 ND 6, ¶ 10, 604 N.W.2d 445). In order for a waiver to be knowing and intelligent, defendants should be made aware of the danger and disadvantages of proceeding pro se. *Schneeweiss*, at ¶ 26 (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).

The record must reflect satisfaction of a two-part test employed to determine whether a waiver of the right to counsel was effective: (1) whether the waiver was voluntary; and (2) whether the waiver was knowing and intelligent. *Schneeweiss,* at ¶ 26 (citing *Dvorak,* at ¶ 12).

[¶ 24] The first part of the analysis does not require the defendant to make an unequivocal statement, as asserted by Habiger in his brief. *Schneeweiss,* at ¶ 27. A defendant's behavior may rise to the functional equivalent of a voluntary waiver of the right to counsel. *Id.* This Court has previously held a "manipulative pattern of obstructing the legal process is the functional equivalent of a voluntary waiver of right to counsel." *Id.* (citing *Dvorak,* at ¶ 15).

[¶ 25] Habiger is not a stranger to the legal system. The record reflects he has experience in hiring attorneys to represent him and he has also represented himself in the past.[1] Habiger repeatedly battled against the district court's attempt to appoint counsel. Additionally, Habiger specifically informed the district court he would employ counsel independently, if he so desired, and at the time of trial he had been unwilling to provide the court with financial information to show he was qualified for court-appointed counsel. These actions indicate Habiger's behavior was the functional equivalent of voluntary waiver of his right to an appointed attorney.

[¶ 26] In the second part of the test, this Court analyzes the record and the facts and circumstances of each case to determine whether the functional waiver was knowing and intelligent. *Schneeweiss,* at ¶ 26. In order for a defendant to have

knowingly and intelligently waived his right to counsel, the "defendant must be aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows the choice is made with eyes open." *Id.* at ¶ 30.

[¶ 27] Repeated efforts by Judge McGuire during Habiger's court appearance and subsequent correspondence reflect Habiger knew of the dangers of self-representation, but he chose to proceed without an attorney. In *Schneeweiss,* the defendant was held to have been warned because the district court informed him he would be held to the same standards as an attorney. *Schneeweiss,* at ¶ 31.

[¶ 28] In his letter dated September 6, 2002, Judge McGuire specifically informed Habiger he needed to be prepared and understand the rules of procedure under which the trial would proceed. Additionally, Habiger made comments on the record which indicate he has experience with the courts. During Habiger's appearance on July 17, 2002, Habiger commented to the district court, "[w]ell, but the point is ... you have to understand, I mean, when it comes to court cases ... you know, the District Attorney is quite aware of who I am." Habiger's prior experience together with his behavior, despite warnings from the district court he could and should have representation, indicate Habiger voluntarily and intelligently waived his right to appointed counsel.

[¶ 29] The district court did not err when it allowed Habiger to proceed pro se. Habiger was warned both orally and in writing by the district court that he needed the advice of counsel. We affirm the district court ruling.

---

1.  During the course of this litigation, Habiger repeatedly referred to past and present cases he had in district court. Habiger also included documents in the record of other cases in which he had been involved.

## IV.

[¶ 30] Habiger argues the district court erred when it did not allow Habiger to elicit favorable character testimony during examination of a witness. We disagree.

[¶ 31] This Court will not overturn a district court's exclusion or admission of evidence, unless the court abused its discretion. *State v. Gagnon*, 1999 ND 13, ¶ 9, 589 N.W.2d 560 (citing *State v. Clark*, 1997 ND 199, ¶ 26, 570 N.W.2d 195). A district court "abuses its discretion when it acts in an arbitrary or capricious manner or misapplies or misinterprets the law." *Gagnon*, at ¶ 9.

[¶ 32] Generally, character evidence may not be introduced to show that a person acted in conformity to character; except, an accused may offer evidence of a pertinent trait of character. N.D.R.Ev. 404 (explanatory note). Rule 404, N.D.R.Ev., governs the admissibility of character evidence by a criminal defendant at trial. Rule 404, N.D.R.Ev., provides:

    (a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

    (1) Character of Accused. Except as otherwise provided by statute, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

Rule 405, N.D.R.Ev., governs the methods by which a party may introduce character evidence if it is admissible under N.D.R.Ev. 404. The rule provides:

    (a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

N.D.R.Ev. 405(a).

[¶ 33] The proper foundation recognized for both opinion and reputation testimony is a witness's observations of a defendant over a length of time. *State v. Gonderman*, 531 N.W.2d 11, 16 (N.D. 1995). "The appropriate means to elicit testimony under [Rule 405] is, after appropriate foundation, to inquire directly as to the witness's opinion concerning the relevant character trait, or the reputation of the accused." *Id.* (citing *State v. McIntyre*, 488 N.W.2d 612 (N.D.1992)).

[¶ 34] Habiger bases his argument on the following exchange with Habiger's witness, Steven Vogel:

Q. Mr. Vogel, would you please tell the Court how long you've known me?

A. Since probably 1970.

Q. So about—

A. Thirty-three years.

Q. Thirty-three years then. In all the time that you've known me—we went to school together, didn't we? You were a couple grades ahead of me?

A. Yep.

Q. Do you ever remember me getting in trouble for beating anybody up or even hitting anybody?

A. No.

MR. DAWSON: Your Honor, I'm going to object to this line of questioning.

MR. HABIGER: Building a foundation for character.

MR. DAWSON: It's our position character evidence is not admissible.

MR. HABIGER: Yes, it is. I've been accused of being a liar, being violent. And I'm going to prove that there's no pattern of it my whole entire life. Mr. Dawson, people that do violent things

have a pattern of it and this isn't an isolated incident. It's a continuum of their behavioral patterns. I think I have a right to prove to the Court, to the jury, that I've never been in a fight in my life ever since I was six years old. I never beat people up. I think it's absolutely pertinent to the jury that I show them that I'm honest and I have character. My whole past life has never showed this type of behavior.

THE COURT: Objection is sustained.

Q. (Mr. Habiger continuing) Okay. Do you think I have character, Mr. Vogel?

A. Yes.

MR. DAWSON: Objection, Your Honor, argumentative.

THE COURT: Sustained.

Q. (Mr. Habiger continuing) Can you believe that I would have done these things that I'm accused of?

MR. DAWSON: Objection, relevance.

THE COURT: Sustained.

Q. (Mr. Habiger continuing) Do you think that I'm a violent person?

A. No.

Q. Do you think it's reasonable, Mr. Vogel, that people that do violent things or react violently have had a pattern in the past of doing those things?

MR. DAWSON: Objection, relevance.

THE COURT: Sustained.

Q. (Mr. Habiger continuing) Do you think I'm an honest person?

A. Yes.

Q. In your honest answer have you ever heard of where I've had a history of lying to people?

A. No, I don't recall any.

Q. Would you agree that people talk about my words and the things that are right?

A. On occasion, yes.

MR. HABIGER: I have no further questions. Thank you, Mr. Vogel.

[¶ 35] The State objected to the specificity of the questions in the beginning of the exchange, but allowed Habiger to elicit testimony as to his general propensity for truthfulness. Habiger's brief mischaracterizes the State's objection and the district court's subsequent ruling. The district court properly sustained objections to Habiger's question regarding specific instances, but allowed questions as to Habiger's reputation for honesty.

[¶ 36] We affirm the judgment.

[¶ 37] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.